UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GALINA DEMCHUK,

        Plaintiff,

    v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security

        Defendant.

No.  2:16-cv-977-EFB

ORDER

      Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for a period of disability and Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act.  The parties have filed cross-motions for summary judgment.  For the reasons discussed below, plaintiff's motion for summary judgment is granted, the Commissioner's motion is denied, and the matter is remanded for further proceedings.

I.    <u>BACKGROUND</u>

      Plaintiff filed applications for a period of disability, DIB, and SSI, alleging that she has been disabled since May 31, 2011.  Administrative Record ("AR") 244-261.  Her applications were denied initially and upon reconsideration.  *Id.* at 168-172, 180-186.  On October 8, 2014, a hearing was held before administrative law judge ("ALJ") David G. Buell.  *Id.* at 26-55.  Plaintiff

was represented by counsel at the hearing, at which a vocational expert and plaintiff, with the assistance of a language interpreter, testified. *Id.*

On November 21, 2014, the ALJ issued a decision finding that plaintiff was not disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Act.[1] *Id.* at 11-21. The ALJ made the following specific findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2012.

2. The claimant has not engaged in substantial gainful activity since May 31, 2011, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

/////

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq.* Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq.* Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Yuckert*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id.*

2

3. The claimant has the following severe impairment: diabetes, coronary artery disease with stent placement in 2009, obesity, lumbar spine degenerative disc disease, and mood disorder (20 CFR 404.1520(c) and 416.920(c)).

\* \* \*

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

\* \* \*

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a wide range of light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant is limited to lifting-carrying 20 pounds occasionally and 10 pounds frequently; is limited to sitting six hours and standing-walking six hours in an eight-hour workday; is limited to occasional stooping, crouching, kneeling, and crawling; cannot climb ladders, ropes, and scaffolds; is limited to simple, routine, repetitive work; cannot have a job that requires on-the-job independent judgment; and is limited to work that can be learned by simple demonstration (unable to use English to learn instructions).

\* \* \*

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

\* \* \*

7. The claimant was born [in May of] 1964 and was 47 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

\* \* \*

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

3

* * *

11. The claimant has not been under a disability, as defined in the Social Security Act, from May 31, 2011, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

*Id.* at 14-21.

Plaintiff's request for Appeals Council review was denied on March 8, 2016, leaving the ALJ's decision as the final decision of the Commissioner. *Id.* at 1-6.

## II.    LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). ECF No. 13 at 15-22.

## III.    ANALYSIS

Plaintiff argues that the ALJ erred in (1) finding that she is literate and able to communicate in English, and (2) assessing her mental and (3) physical limitations. ECF No. 16 at 6-13.

4

A. The ALJ's Finding that Plaintiff Can Communicate in English is Supported by Substantial Evidence

Plaintiff first argues that the ALJ erred in finding that she is literate and able to communicate in English. ECF No. 16 at 6-8. Plaintiff contends that a prior decision from the Commissioner finding that she was illiterate compelled the same finding in this case based on principals of res judicata. She argues that the error is significant because, based on the ALJ's residual functional capacity ("RFC") determination, a finding of illiteracy or inability to communicate in English compels a finding of disability pursuant to Vocational Rule 202.09 as of the date she turned 50.[2] *Id.* at 6.

At step-five of the sequential evaluation process, the Commissioner carries the burden of showing that the claimant, based on her age, education, work history, and RFC, has the ability to perform work available in the national economy. *See Yuckert*, 482 U.S. at 146 n.5. This burden can be satisfied in two ways: (1) by the testimony of a vocational expert, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P. app. 2." *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). The Medical-Vocational Guidelines, often referred to as "the grids," present "a short-hand method for determining the availability and numbers of suitable jobs for a claimant." *Id.* at 1101. In assessing whether the claimant maintains the ability to work, the ALJ is required to first consult the grids, and only where the application of the grids is inappropriate— such as when the claimant suffers from only non-exertional limitations—may the ALJ rely on testimony of a vocational expert. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1115 (9th Cir. 2006). Accordingly, where application of the Grids directs a finding of disability, that finding must be accepted by the Secretary." *Id.* (quoting *Cooper v. Sullivan*, 880 F.2d 1152, 1157 (9th Cir. 1989)).

Of relevance here, Rule 202.09 directs a finding of disabled where the claimant is (1) limited to light work (2) closely approaching advanced age (50-54), (3) illiterate or unable to communicate in English, and (4) previous work experience was unskilled or there is no prior work. 20 C.F.R. Part 404, Subpart P, App. 2, Table No. 2, Rule 202.09.

_____

[2] As plaintiff did not turn 50 until May 2014, which is after her date last insured, the argument is only relevant to her application for SSI.

"The principles of res judicata apply to administrative decisions, although the doctrine is applied less rigidly to administrative proceedings than judicial proceedings." *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir.1988). A prior finding that a claimant is not disabled creates a presumption of nondisability. *Leste*r, 81 F.3d at 827. A claimant can overcome this presumption by showing that there has been a "change in circumstances," such as an increase in the severity of an impairment or a change in the claimant's age category. *Id.* Even if the presumption of continuing disability is rebutted, the ALJ is still required to adopt the prior decision's findings as to education (including literacy and ability to communicate in English) and work experience "with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding." Acquiescence Ruling 97-4(9), 1997 WL 742758, at *3.

In his decision, the ALJ acknowledged that a prior decision concluded that plaintiff was illiterate. AR 19. The ALJ found, however, that there "is new evidence regarding [plaintiff's] ability to speak and understand the English language" that rebutted the presumption that plaintiff continues to be illiterate. Specifically, the ALJ observed that:

> When the claimant was in the hospital with chest pains, the treatment notes indicated that the claimant spoke some English and was able to communicate with the treating doctor. Another treatment note from Sutter Roseville also indicates that the claimant understands some English. Additionally, at the hearing the claimant was able to generally understand the questioning from the ALJ. The claimant further testified that she wrote some reports in English at her past work as a home caregiver.

AR 19-20.

The majority of the evidence discussed by the ALJ is only relevant to plaintiff's ability to speak English, and has no bearing on her literacy. This is significant as plaintiff satisfies Vocational Rule 202.09 if she illiterate *or* unable to communicate in English. 20 C.F.R. Part 404, Subpart P, App. 2, Table No. 2, Rule 202.09; *see also Silveira v. Apfel*, 204 F.3d 1257, 1261 n.13 ("[T]he 'or' in 'illiterate or unable to communicate in English' [is] 'conjunctive,' [meaning] that claimants meet that criterion if they are illiterate or unable to communicate in English or both."); *Garcia v. Astrue*, 2013 WL 394517, at *7 (E.D. Cal. Jan. 30, 2013) ("[T]he determination of

Plaintiff's literacy *and* English communication abilities is key to assessing" applicability of Rule 202.09, and the "ALJ's failure to make a finding as to literacy and to provide reasons for the finding made as to English communication abilities warrant remand for determination of these issues.").

An ability to verbally communicate in English "does not mean that the claimant is literate." *Rodriguez v. Astrue*, 2013 WL 458176, at *1 (C.D. Cal. 2013) (citing *Silveira*, 204 F.3d at 1261 n.13). Instead, an individual is "illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling." 20 C.F.R. § 416.964(b)(1).

Accordingly, the ALJ's finding that plaintiff demonstrated a general ability to understand questions at the administrative hearing and that medical records evidenced an ability to speak some English, even if supported by substantial evidence,[3] fails to rebut the presumption of continuing illiteracy. The only finding relevant to the literacy inquiry was the ALJ's statement that plaintiff "testified that she wrote some reports in English at her past work as a home caregiver." AR 19-20. To the extent the ALJ's statement constitute a finding, that finding is not supported by substantial evidence.

At the hearing, the ALJ briefly inquired into plaintiff's ability to write as follows:

Q [ALJ:] Okay. All right. While you were working as a caregiver in the home. Did you have to write things down - -write things down about what you had done for your patient? Did you write that down?

A: Yeah.

Q: Okay. Are - - you able to write a grocery list in English now?

A: Sorry, sorry, sorry. How about she translate a little bit for me?

Plaintiff's immediate response to the first question may suggest that she can "write things down," but the subsequent response shows that she was having difficulty understanding the ALJ's questions. Significantly, it became apparent to the ALJ that plaintiff required the assistance of a

---

[3] As indicated herein, the transcript from the hearing demonstrate that plaintiff had great difficulty understanding the questions posed by the ALJ.

translator, as evidenced by the ALJ's instruction to the translator to translate the simple question of whether plaintiff is able to write a grocery list.[4] Moreover, other portions of the hearing transcript clearly establish that plaintiff had great difficulty understanding the questions posed by the ALJ.[5] Thus, plaintiff's testimony does not support the finding that she is literate. Accordingly, the ALJ was required to reach the contrary conclusion based on the Commissioner's prior decision finding that plaintiff was illiterate.[6]

As previously noted, to satisfy Vocational Rule 202.09 plaintiff must also be over 50 years of age, limited to light work, and have either unskilled or no prior work. *See* 20 C.F.R. Part 404, Subpart P, App. 2, Table No. 2, Rule 202.09. Plaintiff turned 50 in May 2014, and the ALJ found that she was limited to light work. However, the vocational expert testified that plaintiff's

---

[4] A translator was available by phone to assist plaintiff at the hearing, but the ALJ required plaintiff to respond without the assistance of the translator during various portions of the hearing.

[5] For instance, in responding to the ALJ's question as to what was the source of money for plaintiff's household, plaintiff responded, "Oh, how is very hard, you know? And children - - rest of children in school, you know, school and college." AR 42 at 43. The ALJ also asked plaintiff to explain how she fills her time now that she doesn't work. AR 41. Her response was, "Oh, my back and legs they're not - - not quick and pain, you know . . . like more and more and more and more, you know, like - - like yeah. After I have surgery for heart, you know." *Id*. In response to the ALJ's question as to how plaintiff got her job as a caretaker, plaintiff responded "I working. What?" *Id*. at 38-39. The ALJ followed up with: "How did you get it? Did you know somebody? How did you come to be hired to do that sort of work?" *Id*. at 39. Plaintiff's response was "Oh, this is like house and when - -when like - - like mon and son, you know? . . . He was paralyze, you know, paralyzed?" Contrary to the ALJ's findings, plaintiff had obvious difficulty understanding the questions posed by the ALJ. Further, her responses manifest a marked lack of fluency, let alone literacy, in English.

[6] The Commissioner argues that the ALJ also correctly determined that plaintiff is able to communicate in English because: (1) she has lived in the United States for 25 years and is a naturalized citizen; (2) she previously worked as a caregiver, a job classified by the DOT as requiring Level 2 language skills, and (3) she testified that when she previously worked for American families "she was able to understand almost everything she was told to do." ECF No. 23 at 4 (quoting AR 46-47). The ALJ, however, did not rely did not rely on these reasons for finding that plaintiff was literate, and this court's review is limited to the rationale provided by the ALJ. *See Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require [the court] to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking."); *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (a district court is "constrained to review the reasons the ALJ asserts").

prior work as a caregiver has a specific vocational preparation ("SVP") level of 3, which corresponds with semi-skilled work.  AR 49; SSR 00-4p ("semi-skilled work corresponds to an SVP of 3-4").  However, that fact alone does not preclude a finding that she is disabled under the grids.  Plaintiff may still be found disabled if her prior work did not provide transferable skills.  *See Silveira v. Apfel*, 204 F.3d 1257, 1260 (9th Cir.2000) ("The grid rules are ambiguous with regard to the treatment of skilled or semi-skilled work histories with no transferable skills. We hold that, as a matter of interpretation, in applying the grid rules the Commissioner must treat a skilled or semi-skilled work history with no transferable skills as equivalent to an unskilled work history.").

Accordingly, plaintiff satisfies Vocational Rule 202.09 if the caregiver position did not provide transferable skills.  The ALJ did not make any findings as to whether plaintiff had transferable work skills, and therefor remand is necessary to permit the ALJ to consider this issue.

B. <u>Mental Limitations</u>

Plaintiff next argues that the ALJ erred in assessing her mental impairments.  ECF No. 16 at 8-10.  Specifically, plaintiff contends that the ALJ's RFC analysis completely failed to address evidence related to her mental impairments.  *Id*. at 8-9.  Plaintiff also argues that the ALJ erred by rejecting medical opinion evidence without explanation.  *Id*. at 9-10.

In his decision, the ALJ discussed two medical opinions concerning plaintiff's mental limitations.  Dr. Timothy Canty, M.D., an examining physician, completed a psychiatric evaluation of plaintiff.  AR 823-826.  He diagnosed plaintiff with mood disorder, not otherwise specified, and opined that she would not have difficulty performing simple, straightforward work.  *Id*. at 825-826.  It was also Dr. Canty's opinion that plaintiff would not be able to tolerate public work due to her inability to speak English, but would not have difficulty "with a few coworkers and supervisors."  *Id*. at 826.  He further opined that she was able to concentrate on predictable tasks, but could not tolerate stressful or complex work.  *Id*.

Dr. Pail Klein, Psy.D., a non-examining physician, reviewed plaintiff's medical records and opined that she was able to understand and remember simple and detailed work; sustain concentration, persistence, and pace for simple and some detailed tasks; accept instructions in the

Russian language from supervisors when motivated to do so; interact with coworkers in Russian language but with limited public contact; and adapt to normal work-related changes in most routine work-like settings. *Id*. at 163.

Plaintiff first argues that the ALJ erred by failing to discuss Dr. Canty and Dr. Klein's opinions in the portion of the decision addressing her residual functional capacity. ECF No. 16 at 8-9. Plaintiff's objection is over the decision's organization, and not a failure to address these physicians' opinions. In the section of the decision analyzing step-three of the sequential evaluation process, the ALJ discussed in detail the opinions provided by both physicians. AR 15. The ALJ also explained that little weight was given to Dr. Klein's non-examining opinion, while Dr. Canty's opinion was accorded great weight. *Id*. The ALJ concluded that Dr. Canty's opinion was entitled to more weight because it was substantiated by the evidence of record and consistent with plaintiff's lack of psychiatric treatment and ability to socialize. *Id*. Thus, the ALJ fully considered both opinions and explained the weight each opinion was given. Although this discussion was not contained in the section of the decision addressing plaintiff's RFC, it is clear from the decision that the ALJ intended to rely on Dr. Canty's opinion in assessing plaintiff's RFC.

However, plaintiff correctly argues that despite giving great weight to Dr. Canty's opinion, the ALJ rejected portions of Canty's opinion without comment. As discussed above, Dr. Canty opined that plaintiff would not be able to tolerate public work due to her inability to speak English, but would not have difficulty "with a few coworkers and supervisors." AR 826. He also opined that plaintiff would not tolerate stressful work. *Id*. These opinions are not reflected in plaintiff's RFC, and the ALJ was not permitted to reject these opinions without explanation. *See* AR 16 (limiting plaintiff to simple, routine repetitive work; work that doesn't require on-the-job independent judgment and can be learned by simple demonstration (without instructions provided in English)); *Trevizo v. Berryhill*, ___ F.3d ___, 2017 WL 4053751, at *7 (if an "examining doctor's opinion is contracted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence."); *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) ("Where an ALJ does not explicitly reject a medical

opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs."); *Flores v. Shalala*, 49 F.3d 562, 570 (9th Cir. 1995) (An ALJ "may not reject 'significant probative evidence' without explanation.").

The Commissioner argues that the ALJ properly rejected Dr. Canty's opinion that plaintiff could not tolerate working with the public. The Commissioner contends that the opinion was based on Dr. Canty's finding that plaintiff does not speak English, and the ALJ reasonably determined that plaintiff could communicate in English. ECF No. 23 at 7. The argument is unpersuasive for a number of reasons. First, the ALJ did not rely on this reason for rejecting Dr. Canty's opinion, and this court's review is limited to the rationale provided by the ALJ. *See Bray*, 554 F.3d at 1225; *Connett*, 340 F.3d at 874. Even if he had, as discussed above, the transcript from the administrative hearing demonstrates that plaintiff is extremely limited in her ability to communicate in English. This is further confirmed by the ALJ's own finding that plaintiff lacks the ability to follow job instructions provided in English. AR 16. Lastly, the argument fails to account for Dr. Canty's opinion that plaintiff was limited to interacting "with a few coworkers and supervisors," and could not tolerate stressful work. These limitations were also omitted, without explanation, from the ALJ's determination of the plaintiff's RFC.

As the ALJ erred by rejecting significant portions of Dr. Canty's opinion without explanation, remand is also appropriate for further consideration of plaintiff's RFC. *See Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) ("A district court may reverse the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing, but the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.").[7]

IV.    CONCLUSION

Accordingly, it is hereby ORDERED that:

1.  Plaintiff's motion for summary judgment is granted;

/////

_____

[7] As the matter must be remanded on this basis, the court declines to address plaintiff's remaining argument.

2. The Commissioner's cross-motion for summary judgment is denied;

3. The matter is remanded for further consideration consistent with this order; and

4. The Clerk is directed to enter judgment in plaintiff's favor.

DATED:  September 27, 2017.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE